GALE *against* BARNES.

CERTIORARI to a Justice's Court. After issue joined in *assumpsit* on account, by *Barnes* against *Gale*, the defendant said he would go on and try the cause, and the Justice told the plaintiff to go on with his account. The plaintiff then asked the defendant if he would admit any of his account? and the defendant did admit one or two of the charges, and

firmed. But, in *Shepherd* v. *Baylor*, (2 *South. Rep.* 827) on certiorari, the jury, after they had retired, left the room, forcibly and against the will of the constable; one of them actually absconded, and returned home to his own house; and two others were found in the publick road, and could not be gotten to return, till they were actually seized and taken back by the constable; and, *per Curiam*. " Conduct like this is too gross to be tolerated. It is such a deviation from duty, decency, and order, as to impeach the motives, as well as the verdict, of any jury." Judgment reversed.

*Rhode-Island.* In *Burrill* v. *Phillips*, cor. *Story*, J. (1 *Gall. Rep.* 360) the jury were charged late in the evening, and one of them, through mere mistake of his duty, left his fellows, and went immediately to his own home, at the distance of 2 miles, but was sent for, and returned back in about 2 hours, when the jury, without difficulty, agreed on their verdict; and, per *Story*, J. " At first, I was struck with the inconvenience of allowing a verdict after a separation of the jurors; and when an opportunity had been given to tamper with them And, without doubt, as this is an application to the discretion of the Court, the verdict ought to be set aside, unless the conduct of the juror be free from unfavourable presumption. I am perfectly satisfied with the verdict in this case. Indeed, I do not see how it could have been otherwise, upon the evidence before the jury; and I should feel great reluctance in setting aside a verdict so well founded in law and justice. I am glad to be relieved from all doubt, by authority. The case of *St. John* v. *Abbot*, (*Barnes*, 441) is directly in point, and the distinction assumed by the plaintiff's counsel, is, in general, well supported. I overrule the motion to set aside the verdict."

*Virginia.* But in the important case of the *Commonwealth* v. *John M'Caul*, (*Virginia Cases*, 271) decided by the Superior Court, in 1812, the prisoner was indicted for grand larceny: The trial continued 4 days: on each of which the Court adjourned for about 2 hours, giving orders, that in the mean time the jury should be kept together, in a room by themselves, where they were allowed refreshments. On their way to the jury room, at the 2d adjournment, one of the jurors, having been unexpectedly sworn on the jury, separated from his fellows for about 20 minutes, to attend to

*Note (margin):* Where the justice tells the plaintiff to go on to trial, after both parties have avowed themselves ready, and, on being asked, the defendant admits part of the plaintiff's account, and a witness for the plaintiff is partly sworn, it is too late to call for a venire.

UTICA,      objected to the others.    The plaintiff then called a witness,
August, 1823.   and after the Justice had begun to administer the oath, the
GALE     defendant demanded a venire, which the Justice refused.
v.      Judgment for the plaintiff.
BARNES.

*John V. D. Scott,* for the plaintiff in error.

*E. Barnes,* contra.

some necessary business. His pretence was that he wished to dine at home ;
his departure was opposed by the Sheriff, who admonished him not to go,
and took hold of his arm to prevent him.   He went, however, unattended
by an officer, there being none  in waiting  who could conveniently attend
him.    The juror stated that he believed the Court, at that time, did not in-
struct the  jury to remain together ; and he understood  the design of the
adjournment was with  the view that the jury might  obtain  some refresh-
ment.  He ate his dinner  at his boarding house, and returned.   Several
persons asked  him if the trial of *M'Caul* had ended, to which  he answered
in the negative, but he had (as he stated) no further  conversation with
any one on the  subject  of the trial ; denied that he had been practised
with, and  no abuse appeared.   Another juryman was absent a  few minutes
on a visit  to his sick child, (this was on the morning of the 2d day of the
trial,) with  an officer, from  whom he  was separated about 5 minutes,  on
going into his chamber to see the child.   Verdict of guilty.
On moving to  set this verdict aside, Mr. *Wirt,* for the prisoner, defied
the Attorney General to  produce a single  case of life and death, in which a
verdict was allowed to stand after a separation of the jury ; and Mr. *Nich-
olas, the Attorney General,* said that Mr. *Wirt* could  not produce a  single
case from the English books, in which the  separation of one juryman from
his fellows was  considered sufficient to set aside the verdict.   He said
" there are many instances in which the jurors may be subject to punish-
ment for misbehaviour, and yet the verdict will stand ; and he referred to
2 *Hale,* 306. 21*st  Viner,* 448.  *Bull. N. P.* 308, *and* 7 *Bac.* 11, 12.   He re-
ferred also to a case stated in 2 *Hale,* 296, which is thus given by him : " Up-
on not guilty pleaded, 12 are sworn to try  the issue ; after their departure,
A, one of the 12, leaves his companions, which being discovered to the Court,
by consent of all parties, B, another of  the panel, is sworn in the place of
A, and afterwards A returns to his company, which  being made known to
the Court, A is called, and examined  why he departed ?  he answered " to
drink ;" and being  examined whether he had spoken with the defendant,
denied it upon his oath ; whereupon B was discharged from  giving any
verdict, and the verdict taken of A and the other 11, and A fined for his
contempt." (34 *E.* 3. *Office de Cour,* 12,  *in trespass.*)
A majority of the  Court were of opinion that actual tampering, or con-
versation on the subject of the trial with a juryman, was not necessary to
set aside the verdict.   And per *Nelson, J.* (who delivered the opinion of

*Curia.* The defendant was too late in his application for a venire. An investigation had commenced. In *Olney* v. *Bacon*, (1 *John.* 142) the Justice had merely inspected the account, and the Court said the trial had not commenced. In this case, the Justice told the plaintiff to go on, in consequence of which he proceeded to prove some items, by the admission of the defendant; and a witness was partly sworn before the call for a venire.

UTICA,
August, 1823

GALE
v.
BARNES.

Judgment affirmed.(*a*)

(*a*) And vid. *Bayless* v. *Crany*, ante, 86.

the Court) "from the mode in which collusion and tampering is generally carried on, such circumstance is generally known to no person, except the one tampering, and the person tampered with, or the persons between whom a conversation may be held, which might influence the verdict. If you question either of these persons on the subject, he must criminate, or declare himself innocent, and you lay before him an inducement not to give correct testimony. The old rule was, that the jury on no occasion, should separate. I mentioned (though it was with difficulty that the rule has been at all relaxed) that it is relaxed only in cases of imperious, or perhaps of unavoidable necessity. But by allowing that a jury may separate without necessity, and that their verdict shall stand, unless the party accused, who, in these cases, is in the custody of law, can shew that the jury not only have separated, but that they, or a member of it, has also been tampered with, or held communication on the subject; this great barrier against oppression may gradually be sapped and undermined, and the bulwark cannot long remain. Such a precedent would be productive of evils incalculable, and too great for the Court, by its decision, to allow a door to be opened for them. Every danger, and particularly in such a case as this, should be watched, and opposed in the beginning. The Court will preserve "with fear and jealousy," and will not expose the trial by jury in criminal cases to such risk of contamination, as arises from the affidavits in this case. If the Court hath, without necessity, suffered a juryman to go home without an officer, (which it would never do) it would vitiate the verdict. There is as much danger from a juryman's separating, without the act of the Court, as if it had been done by such act. Although there might be, and probably was no tampering with any juryman in this case, yet, in a free country, in deciding a particular cause, the decision is to be according to general principles as applied to that case; and more good will arise from preserving the sacred principle involved in this case, than evil from granting a new trial, although in this individual instance, a verdict has probably been given by twelve men, in fact, unbiased by the separation."